IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DANIEL G.,[1]

                        Plaintiff,           Civ. No. 6:23-cv-00543-MK

v.                                      **OPINION AND ORDER**

COMMISSIONER, Social Security
Administration,

                        Defendant.

_____

**KASUBHAI, Magistrate Judge:**

      Plaintiff Daniel G. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 11. For the reasons below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in April 2020, alleging an amended disability onset date of January 1, 2020. Tr. 79, 212.[2] His application was denied initially and upon reconsideration. Tr. 75-91, 95-116. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in December 2021. Tr. 26-27. On December 21, 2021, the ALJ issued a decision finding Plaintiff not disabled under the Act. Tr. 13-22. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 40 years old on his alleged onset date. Tr. 79, 212. The ALJ found that Plaintiff is capable of performing past relevant work as a packer. Tr. 21. Plaintiff alleged disability based on post-traumatic stress disorder ("PTSD") and "left knee problems." Tr. 84.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

---

[2] "Tr." citations are to the Administrative Record. ECF No. 5.

ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since his alleged onset date. Tr. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: "a mental impairment diagnosed to include schizoaffective disorder, depressive disorder, PTSD, opioid abuse in early remission, and cannabis use disorder." *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 16. The ALJ found that Plaintiff had an RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> Plaintiff is limited to performing simple, routine tasks, and he can use judgment for that type of work and can deal with changes in a

> work setting that are consistent with simple work-related decisions. Plaintiff can have no more than occasional interaction with supervisors, coworkers, and the public.

Tr. 17. At step four, the ALJ found that Plaintiff could perform his past relevant work as a packer. Tr. 21. The ALJ thus found Plaintiff was not disabled under the Act. Tr. 22.

## DISCUSSION

Plaintiff asserts remand is warranted because the ALJ failed to give clear and convincing reasons for rejecting his subjective symptom testimony and the lay witness testimony from his wife.[3]

### I. Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to

---

[3] Plaintiff also argues the ALJ erred in finding that he could return to his past relevant work as a packer because it was an unsuccessful work attempt and therefore not substantial gainful activity. Pl.'s Br. 9. Plaintiff seems to abandon this argument and leave it unaddressed in his reply brief. This Court agrees with the Commissioner's argument. Plaintiff's alleged onset date is January 1, 2020, well after he stopped working the packer job in 2017, and "an unsuccessful work attempt cannot logically take place prior to the alleged onset of a claimant's disability." Def.'s Br. 13 (citing *Argueta v. Berryhill*, 703 F. App'x 4601, 461 (9th Cir. 2017)). Therefore, Plaintiff's work as a packer from March 2017 to May 2017 was not an unsuccessful work attempt, and the ALJ did not err in this regard.

permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[4] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

At the hearing, Plaintiff testified that his mental impairments severely limited his ability to seek employment. The ALJ asked Plaintiff if he was able to return to work as a packer, and Plaintiff stated he did not think he could work as a packer because he "ha[s] problems with people[,]" and that he takes naps during the day because he rarely sleeps. Tr. 50. Plaintiff further explained that his "motivation is like not there, compared to before . . ." and ". . . there's just no get up and go." *Id.* Plaintiff testified that he has side effects from his medications, and explained that they make him feel "drugged up all the time[,]" and "very pushed down, very shaky all the time, [and] very tired." Tr. 51. Plaintiff stated he does not "really feel much emotionally" due to

---

[4] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

his medications and that it's like he is a "different person" when he takes them. *Id.* Plaintiff testified that he can walk one mile, sit for about one to two hours, and that he cannot stand for "very long." Tr. 52. Plaintiff explained that his standing and walking abilities are limited because when standing "his legs and [his] arms and everything shakes a little bit . . . ." and that "they're like tremors." *Id.* Plaintiff testified that laying down is "basically [his] life now" because he is "exhausted all the time." *Id.* As for his activities of daily living, Plaintiff stated that he is able to dress and bathe himself, but he is unable to do any household chores, and relies on his wife to do everything. Tr. 53. When asked why he is unable to perform household chores, Plaintiff replied, "it may be hard to understand, but I was a very strong and intentional operator and employee and father and now I'm not" and that "there's a frustration level when I can't or when it takes forever, or I'm let's say folding the laundry and I'm laying down. I can't – you know what I mean, because I just want to take a nap." *Id.* At the hearing, Plaintiff also testified that he is unable to help take care of his three-week-old twins besides heating up bottles, and that he wishes he could help more. Tr. 55-56. Plaintiff explained that he tries to change diapers, but he is unable to handle the children crying. *Id.* When asked to describe his hobbies, Plaintiff explained that he likes to go hunting and stated "it just gets me away." Tr. 58. Plaintiff testified that his PTSD causes him to frequently have intrusive memories and nightmares. Tr. 68.

The ALJ rejected Plaintiff's subjective symptom testimony about his impairments on the grounds that, while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 18. In making this finding, the ALJ discredited Plaintiff's subjective symptom testimony for the following reasons: (1) Plaintiff's impairments are inconsistent with his

treatment history; (2) Plaintiff's activities of daily living were inconsistent with his alleged symptoms; and (3) Plaintiff's impairments were not supported by the objective medical evidence. The court reviews the ALJ's reasons in turn.

### A. Improvement with Treatment

An ALJ may discount a claimant's testimony based on effective treatment. *See Bettis v. Colvin*, 649 F. App'x 390, 391 (9th Cir. 2016). In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (noting that "conservative treatment" was sufficient to discount the claimant's testimony regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment ... can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, adjudicators are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted).

Here, Plaintiff's treatment history was not a clear and convincing reason to reject his testimony because the ALJ failed to articulate his reasoning with sufficient specificity for this court to adequately review the decision. When discounting symptom testimony, an ALJ's decision "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991) (citation and internal quotation marks omitted). In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the

record supporting her non-credibility determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

When relying on Plaintiff's alleged improvement with treatment to discount his testimony, the ALJ failed to connect the dots and simply summarized medical records. The ALJ summarized treatment notes discussing changes to Plaintiff's medication regimen during his inpatient hospitalization on January 15, 2020, for opioid use disorder. Tr. 19 (citing Tr. 323). For instance, the ALJ discussed how Plaintiff was initially taking Quetiapine and then switched to Olanzapine for improved treatment of visual hallucinations and paranoia. *Id.* The ALJ acknowledged Plaintiff's report that Olanzapine was helpful for sleep but made him feel "groggy" and he was not interested in continuing this medication regimen as an outpatient. *Id.* The ALJ explained that Plaintiff was prescribed Lurasidone, Sertraline, Quetiapine, Propanolol, and Hydroxine which "provided some benefit." Tr. 20 (citing Tr. 303, 339). The ALJ cited Plaintiff's report that Hydroxyzine was helpful for sleep, and that his mood had improved since being on Sertraline. *Id.* (citing Tr. 358, 1097). The ALJ discussed how from June 2020 to October 2021, Plaintiff "actively denied psychological symptoms on the record including delusions, hallucinations, manic symptoms, and suicidal and homicidal ideations. *Id.* (citing Tr. 338-39, 341, 437-440, 1047, 1066).

The ALJ also summarized Plaintiff's lack of compliance with treatment. The ALJ again discussed Plaintiff's inpatient hospitalization on January 15, 2020. Tr. 19 (citing Tr. 36-27). The ALJ cited treatment notes where Plaintiff requested to be ". . . discharged on January 17, 2020 after being told that he would not be able to return to the unit after leaving to smoke and he did not like the food." *Id.* (citing Tr. 326). The ALJ stated that Plaintiff's discharge was against medical advice, as he was supposed to stay a full week but only stayed for two days. Tr. 17

(citing Tr. 323, 332). The ALJ didn't specifically articulate how Plaintiff's discharge is inconsistent with his testimony, but even if she did, the Ninth Circuit has explained that failure to seek or follow a prescribed course of mental health treatment is a problematic reason to discredit mental health complaints. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) ("Indeed, we have particularly criticized the use of a lack of treatment to reject mental health complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a  for the exercise of poor judgment in seeking rehabilitation.' ") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996))). This was therefore not a clear and convincing reason to discount Plaintiff's testimony regarding his mental health limitations.

The ALJ also discussed Plaintiff's admittance into a TRC-PTSD residential program from February 20, 2020, to March 14, 2020. Tr. 19 (citing Tr. 414). The ALJ noted that Plaintiff opted to leave the program early due to the spread of COVID-19, but during his admission, he was noted as an active participant who was pleasant and engaged with staff and peers, participated in group discussions appropriately. *Id.* (citing Tr. 413–14). The ALJ cited treatment records where Plaintiff stated that he found the TRC-PTSD residential program very helpful, and that his anxiety was significantly better. Tr. 19 (citing Tr. 414). Again, this mere summary of Plaintiff's treatment history is not a valid reason to discredit Plaintiff's subjective symptom testimony.

Overall, the ALJ's summary of medical records does not identify which of Plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. Ultimately, the ALJ's decision does not identify specific treatment Plaintiff should have sought (but didn't), and what aspects of Plaintiff's testimony are less reliable as a result.

That leaves this reviewing court to surmise which "testimony she found not credible" and what "particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, F.3d at 494. Failure to provide such clear analysis is error, and the Court finds Plaintiff's treatment history was not a sufficiently clear and convincing reason for discounting his symptom testimony.

### B. Activities of Daily Living

The ALJ next rejected Plaintiff's subjective symptom testimony on the basis that his activities of daily living were inconsistent with his reports that his impairments significantly limited his daily activities. An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ discussed that while Plaintiff continued to report symptoms of visual hallucinations and poor sleep, he also reported that he was doing generally well, caring for his kids, and working almost full time at the Army/Navy Surplus Store. Tr. 19 (citing Tr. 439, 862, 1046, 1061, 1072). The ALJ cited a treatment note where Plaintiff reported he had been working double shifts. Tr. 20 (citing Tr. 1061, 1075). The ALJ discussed how in June 2021, Plaintiff reported that he was "juggling multiple demands" but "doing well." Tr. 1064. The ALJ asserted

that overall, treatment records showed Plaintiff "was doing well once he was sober." Tr. 20 (citing Tr. 439, 862, 1046, 1064, 1072).

Other than summarizing Plaintiff's activities, the ALJ did not explain how Plaintiff's part-time work and caring for his children undermined his subjective symptom testimony about his mental limitations; the ALJ merely concluded that these activities were inconsistent with Plaintiff's allegations. Tr. 20. *see David H. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00571-MK, 2020 WL 1970811, at *4 (D. Or. Apr. 24, 2020) (rejecting ALJ's reliance on claimant's activities where "the ALJ did not explain how these minimal activities undermined [the claimant's] symptom testimony") (citation omitted). This was error.

The ALJ's discussion of Plaintiff's limited ability to care for his children is undeveloped. Caring for children without assistance is a demanding task that can undermine a claimant's assertions of disability. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, however, Plaintiff was caring for his children with assistance. Plaintiff testified that he is "basically a child" and his wife has "come to the point that she does everything, unfortunately." Tr. 40, 53. Plaintiff testified that he is unable to help his wife take care of their three-week-old twins besides heating up bottles, and that he wishes he could help more. Tr. 55–56. Plaintiff explained that he tries to change diapers, but he cannot handle the children crying. *Id.* In regard to Plaintiff's limited ability to care for his children, the ALJ ultimately failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918. As this Court has explained, "an ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Shirley C. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-cv-01212-MK, 2021 WL 3008265, at *6 (D. Or. July 15, 2021).

Similarly, the ALJ's discussion of Plaintiff's work activity is undeveloped. Conflict between a plaintiff's work history and symptom testimony is a clear and convincing reason to discount a plaintiff's testimony. *Camarena v. Kijakazi*, 2021 WL 5905720, at *1 (9th Cir. Dec. 14, 2021) (Plaintiff's work history contradicted her testimony regarding her physical limitations and provided valid grounds on which the ALJ could discredit her testimony." (citing *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020)). Here, however, the ALJ did not provide substantial evidence to support the conclusion that Plaintiff's ability to work part-time conflicts with his limitations. Plaintiff testified that his part-time work at the Army Surplus Store was not done on a consistent basis, and he received a lot of accommodations. Tr. 41-43. Specifically, Plaintiff explained that his supervisor was someone he personally knew prior to employment, and that he works "off and on" and the work gets done as needed. Tr. 42. At the hearing, Plaintiff stated that he hadn't worked there in three months because "there's really nothing to do" and "they must have gotten really slow." *Id.* When describing what his work entailed, Plaintiff explained that his supervisor would receive a surplus of army plates or products for weapons and then Plaintiff would test the equipment, which was sometimes done in his own home or on land very close to his home. Tr. 43. When discussing Plaintiff's work activity, the ALJ simply stated that Plaintiff "worked close to full-time in 2021 at the Army/Navy Surplus Store." Tr. 20. The ALJ did not address what the work entailed, how it was "off and on," or how this heavily accommodated part-time work conflicts with his testimony. Again, the ALJ failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918.

Therefore, Plaintiff's activities do not constitute a clear and convincing reason for discounting his testimony.

Page 13 – OPINION AND ORDER

### C. Objective Medical Evidence

Lastly, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence. Tr. 19-21. The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). However, the ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter*, 806 F.3d at 493. The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Here the ALJ again failed to develop her analysis and simply summarized medical records. The ALJ cited a mental status examination where Plaintiff showed "grossly intact attention and concentration and logical goal directed thought process, grossly intact cognition, and fair insight and judgment." Tr. 16 (citing Tr. 325, 327, 332, 338, 739). The ALJ acknowledged that Plaintiff was stressed, mildly anxious, and irritable at times, but also discussed how Plaintiff was generally polite and cooperative with normal speech, had no deficits

in cognitive processing speed, and that there was no evidence of a formal thought disorder. Tr. 19-20 (citing Tr. 338, 834, 864, 1047, 1062). The ALJ explained that Plaintiff's psychotic process was "logical, linear, and goal directed" and that Plaintiff's cognition was grossly intact, and he had average intellectual functioning. Tr. 20 (citing Tr. 338, 834, 864, 866, 871, 874, 1046–47, 1059, 1062, 1064, 1066, 1072, 1074).

The ALJ did not reasonably discount Plaintiff's allegations about the severity of his mental health impairments as inconsistent with the record. The ALJ purported to discount several aspects of this testimony based on its inconsistency with the record, but did not do so with sufficient clarity or thoroughness. Other than summarizing the medical evidence, the ALJ fails to articulate how the treatment providers' observations cited above contradict Plaintiff's subjective complaints and therefore falls short of the requisite clear-and-convincing standard. *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citation omitted); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting an ALJ's reliance of the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety"); *see also Garrison v. Colvin* 759 F.3d 995, 1017 (9th Cir. 2014) (it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.). As such, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony relating to his mental impairments.

In sum, the ALJ erred in rejecting Plaintiff's subjective symptom testimony because she failed to provide specific, clear, and convincing reasons as to why her testimony contradicted, or

was undermined by, his treatment history, his activities of daily living, and the objective medical record.

## II. Lay Witness Testimony

Plaintiff argues that the ALJ erred by not providing any germane and specific reasons for rejecting the lay witness testimony. Pl.'s Br. 9. In response, the Commissioner argues that (1) the ALJ need not provide germane reasons for discounting nonmedical lay witness testimony under the new regulations; and (2) even if the ALJ erred, the error was harmless because the ALJ discounted the lay witness statement for the same valid reasons she discounted Plaintiff's testimony. Def.'s Br. 12 (citing *Valentine v. Comm'r of Soc. Sec.*, 574, F.3d 685, 694 (9th Cir. 2009)).

Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must consider. *Nguyen*, 100 F.3d at 1467. To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114. The reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The ALJ must consider evidence under the new regulations, which state the ALJ is "not required to articulate how [they] considered evidence from nonmedical sources" when using the same criteria used in evaluating medical sources. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has

yet to decide whether this means the ALJ is still required to provide germane reasons when rejecting nonmedical testimony. However, this Court, along with many in this district, interprets the new regulations to mean that the ALJ must still provide germane reasons when rejecting lay witness testimony. *See*, *e.g.*, *Catherine R. v. Commissioner*, No. 1:20-cv-01503-MK, 2021 WL 5235543, at *9 (D. Or. Nov. 10, 2021) ("The ALJ errs when the ALJ fails to provide specific, germane reasons for rejecting the lay witness statement."); *see also Tracy Q. v. Kijakazi*, No. 6:22-cv-692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) ("The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony.").

Here, Plaintiff's wife submitted a lay witness statement in support of his disability claim. Tr. 265-70. The ALJ discounted this statement because the "statement is inconsistent to the extent that it indicates [Plaintiff's] inability to perform work under this residual functional capacity for the same reasons that [Plaintiff's] subjective complaints are not fully consistent with the evidence." Tr. 21.

The Commissioner argues any alleged error by the ALJ was harmless because the lay witness statements were rejected "for the same reasons that [Plaintiff's] subjective complaints are not fully consistent with the evidence." Def.'s Br. 12 (citing Tr. 20). As discussed above, however, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints, so those rationales cannot cover for his failure to address the lay witness testimony. The ALJ did not consider this lay witness testimony, and failed to provide germane and specific reasons, which was in error.

/ / /

/ / /

Page 17 – OPINION AND ORDER

**III.    Remedy**

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an immediate award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016). Even where all the requisites are met, however, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts ... serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks omitted)).

Here, the Court concludes that remand for additional proceedings is the appropriate remedy.  The Court concludes the ALJ committed legal error by improperly rejecting Plaintiff's subjective symptom testimony and the lay witness testimony from Plaintiff's wife. This Court finds, however, that remanding for further proceedings is the appropriate remedy as the record is

Page 18 – OPINION AND ORDER

ambiguous as to whether the ALJ would be required to find Plaintiff disabled on remand. Specifically, it is unclear as to whether Plaintiff sustained improvement with treatment, rather than their mental health symptoms merely waxing and waning with treatment. Plaintiff's activity levels are also underdeveloped in the record, as it seems they live a rather active lifestyle where they hike, hunt, and work part-time, but further development on these issues in regard to his mental health is needed. Therefore, the Court is unable to conclude the ALJ would be required to find the claimant disabled upon remand.

Accordingly, the Court remands this case on an open record to: (1) accept or provide legally sufficient reasons for rejecting Plaintiff's subjective symptom testimony (2) accept or provide legally sufficient reasons for rejecting the lay witness testimony; (3) accept or provide a new RFC formulation; and (4) conduct any further necessary proceedings.

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 13th day of September 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge